[No. A112839. First Dist., Div. One. Aug. 24, 2006.]

In re LUIS B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
LUIS B., Defendant and Appellant.

**COUNSEL**

Alan Charles Dell'Ario, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson and Gerald A. Engler, Assistant Attorneys General, Martin S. Kaye and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SWAGER, J.**—Following a contested jurisdictional hearing the juvenile court found that defendant committed the offenses of felony second degree burglary (Pen. Code, § 460, subd. (b)), and misdemeanor petty theft (Pen. Code, § 484), as alleged in a petition filed on October 7, 2005, pursuant to Welfare and Institutions Code section 602.[1] He also admitted allegations of resisting a peace officer (Pen. Code, § 148, subd. (a)(1)), as alleged in a previously filed, separate petition.[2] He was subsequently declared a ward of the court, removed from the custody of his parents, and placed in the Family Preservation Program. Defendant claims that the prosecutor and court erred by failing to consider him for the statutory deferred entry of judgment (DEJ) program (Welf. & Inst. Code, § 790 et seq.), and challenges the findings and orders of the juvenile court. We concur with defendant and the Attorney General that error was committed, and remand the case to the juvenile court to properly consider defendant for DEJ.

### STATEMENT OF FACTS[3]

The burglary and petty theft offenses occurred on the afternoon of September 12, 2005, at the Valley Pride Supermarket on San Felipe Avenue in South San Francisco. Defendant and his friend Marco entered the market together, but separated: Marco purchased some candy from the front of the store, while defendant went to the "refrigerated cold box" at the rear of the store where the soda is kept. The store clerk watched defendant through a security mirror as he took a 20-ounce bottle of Coke from the refrigerator and put it in his pants pocket. When defendant reached the register, the bottle was apparent in his pocket, so the clerk asked him, "What's that in your pants?" Defendant smiled and "proceeded to walk out of the store." The clerk yelled at defendant, "Come back here," but defendant ignored him.

The clerk locked the store, got into his car, and pursued defendant and Marco as they ran to their "friend Mark's house" about a block away. The clerk then reported the incident and gave to police dispatch the address of the house defendant and Marco entered.

Marco testified that he purchased a cigar in the Valley Pride Supermarket, then went outside to wait for defendant. When defendant reappeared outside

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated; all references to rules are to the California Rules of Court.

[2] An additional charge of willfully carrying a butterfly knife (Pen. Code, § 653k) was dismissed pursuant to a negotiated disposition.

[3] The facts pertinent to the offense of resisting a peace officer admitted by defendant are not pertinent to this appeal.

he told Marco the cashier suspected him of "stealing a Coke," but he denied he had done it. As they walked away from the market the cashier yelled to them, "Come back here," and asked, "Did you take a Coke?" He then returned to the store. When defendant and Marco reached Mark's house, Marco observed that defendant "had a Coke on him." Defendant said he "got it earlier that day."

The next day Officer James Portolan of the South San Francisco Police Department went to the address given by the store clerk. Defendant and Marco were not present, but Mark, one of the residents at that address, gave their names to the officer. Later that evening Officer Portolan interviewed Marco and defendant. Marco told the officer that he observed defendant pull a soda bottle from his pants pocket.

Defendant stated to Officer Portolan that he went to the Valley Pride Supermarket with Marco to "get something to drink." He took a drink from the refrigerator, but replaced it when he realized "he had no money." Defendant "denied taking anything from the store."

At the hearing defendant testified that he went to the Valley Pride Supermarket with Marco, but did not plan to purchase anything. Marco had money, however, so defendant went to the back of the store to buy a Coke. He put the Coke back in the refrigerator when Marco told him he had no more money. After Marco left the store, the clerk accused defendant of stealing something and asked him to empty his pockets. Defendant "kept patting" himself down, but refused to show the clerk the contents of his pockets. He then left the store, and walked with Marco to Mark's house. While at Mark's house defendant drank a Coke he had in his backpack. Defendant denied that he took anything from the market.

## DISCUSSION

Defendant argues that the juvenile court erred by failing to exercise its discretion to consider him for DEJ pursuant to section 790 and rule 1495. Defendant claims that he met the requirements for the DEJ program, but the "prosecutor failed to discharge his duties" under the statutory scheme to "conduct the eligibility determination." He requests that we reverse the judgment and grant him "the opportunity to elect deferred entry of judgment" for the felony offenses charged in the petitions. The Attorney General concedes that failure to consider defendant for deferred entry of judgment was error, and we agree.

■ "The DEJ provisions of section 790 et seq. were enacted as part of Proposition 21, The Gang Violence and Juvenile Crime Prevention Act of

1998, in March 2000. The sections provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed. (§§ 791, subd. (a)(3), 793, subd. (c).)" (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 558 [133 Cal.Rptr.2d 544].)

■ "To be admitted to the DEJ program, a minor must be eligible under section 790, subdivision (a)." (*Martha C. v. Superior Court, supra,* 108 Cal.App.4th 556, 560.) As defendant claims and the Attorney General acknowledges, he is eligible for consideration for DEJ under section 790, subdivision (a), which occurs "if all of the following apply: [¶] (1) The child is 14 years or older at the time of the hearing on the application for deferred entry of judgment; [¶] (2) The offense alleged is not listed in section 707(b); [¶] (3) The child has not been previously declared a ward of the court based on the commission of a felony offense; [¶] (4) The child has not been previously committed to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice; [¶] (5) If the child is presently or was previously a ward of the court, probation has not been revoked before completion; and [¶] (6) The child meets the eligibility standards stated in Penal Code section 1203.06" for probation. (Rule 1495(a); see also *Martha C. v. Superior Court, supra,* at pp. 558–559.)

The provisions in rule 1495(b) for determination of eligibility under section 790 are quite clear. Subdivision (b) specifies: "Before filing a petition alleging a felony offense, or as soon as possible after filing, the prosecuting attorney *shall* review the child's file to determine if the requirements of subdivision (a) are met. If the prosecuting attorney's review reveals that the requirements of subdivision (a) have been met, the prosecuting attorney *shall* file Judicial Council Form JV-750, Determination of Eligibility, with the petition." (Italics added.) Further, "If the minor is found eligible for deferred entry of judgment, the prosecuting attorney *shall* file a declaration in writing with the court or state for the record the grounds upon which the determination is based, and *shall* make this information available to the minor and his or her attorney." (§ 790, subd. (b), italics added.) "If it is determined that the child is ineligible for deferred entry of judgment, the prosecuting attorney *must* complete and provide to the court, the child, and the child's attorney Judicial Council Form JV-750, Determination of Eligibility-Juvenile." (Rule 1495(e), italics added.)

■ The trial court then has the ultimate discretion to rule on the suitability of the minor for DEJ after consideration of the factors specified in rule 1495(d)(3) and section 791, subdivision (b), and based upon the " 'standard of whether the minor will derive benefit from "education, treatment, and rehabilitation" rather than a more restrictive commitment. [Citations.]' " (*Martha C. v. Superior Court, supra*, 108 Cal.App.4th 556, 562, italics omitted, quoting from *In re Sergio R.* (2003) 106 Cal.App.4th 597, 607 [131 Cal.Rptr.2d 160].) The court may grant DEJ to the minor summarily under appropriate circumstances (rule 1495(d)), and if not must conduct a hearing at which "the court *shall* consider the declaration of the prosecuting attorney, any report and recommendations from the probation department, and any other relevant material provided by the child or other interested parties." (Rule 1495(f), italics added.) While the court retains discretion to deny DEJ to an eligible minor, the duty of the prosecuting attorney to assess the eligibility of the minor for DEJ and furnish notice with the petition is mandatory, as is the duty of the juvenile court to either summarily grant DEJ or examine the record, conduct a hearing, and make "the final determination regarding education, treatment, and rehabilitation . . . ." (§ 791, subd. (b); see also § 790, subd. (b); rule 1495(b), (d) & (f); *Martha C. v. Superior Court, supra*, at p. 559.) ■ Use of the mandatory language "shall" indicates a legislative intent to impose a mandatory duty; no discretion is granted. (See *In re Alanna A.* (2005) 135 Cal.App.4th 555, 563 [37 Cal.Rptr.3d 579]; *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535, 551 [126 Cal.Rptr.2d 14].) " ' " 'Shall' is mandatory, . . . 'may' is permissive." (Cal. Rules of Court, rule 407(a).)' [Citations.]" (*In re Sergio R., supra*, at p. 605, fn. omitted.) ■ The court is not required to ultimately grant DEJ, but is required to at least follow specified procedures and exercise discretion to reach a final determination once the mandatory threshold eligibility determination is made. (*Id.* at p. 604.)

■ Here, the prosecuting attorney did not satisfy the statutory requirements to determine eligibility and provide notice, and the trial court failed to conduct the necessary inquiry and exercise discretion to determine whether defendant will derive benefit from education, treatment, and rehabilitation rather than a more restrictive commitment. Therefore, error was committed.

## DISPOSITION

The error requires that we set aside the findings and dispositional orders, and remand the case to the juvenile court for further proceedings in compliance with section 790 et seq., and rule 1495. If, as a result of those proceedings, the juvenile court grants DEJ to defendant, it shall issue an order vacating the findings and orders. If the juvenile court denies DEJ to defendant, it shall make its order continuing in effect the judgment, subject to

defendant's right to have the denial of DEJ and the findings and orders reviewed on appeal.[4] (See *People v. Dyas* (1979) 100 Cal.App.3d 464, 470 [161 Cal.Rptr. 39].)

Marchiano, P. J., and Stein, J., concurred.

---

[4] In light of our conclusions and disposition, we need not confront the remaining issues raised by defendant, as we do not yet know whether the juvenile court's findings and orders will stand.